This is a suit in which plaintiff, G.H. Bland, who was later joined as a party plaintiff by his wife, sued the defendants, husband and wife, for specific performance of an alleged agreement of sale of certain real estate in the City of Shreveport, or, in the alternative, for judgment in the sum of $1,000, representing double the earnest money paid over by plaintiffs at the time of execution of the alleged agreement. The demand for specific performance was dismissed, on plaintiff's motion, before trial below. After trial there was judgment in favor of defendants, rejecting the demands of plaintiffs, from which judgment plaintiffs appeal.
During the course of the proceedings below, plaintiffs obtained writs of attachment on the property of the defendants on the ground that the latter had become nonresidents of the State. These writs of attachment were released upon the deposit by plaintiffs of the sum of $1,250, in cash, in the hands of J. Howell Flournoy, Sheriff of Caddo Parish, Louisiana.
Before this Court plaintiffs claim they are entitled to judgment in the sum of $1,000, or, in any event, to judgment decreeing the return of the $500 actually paid over.
Attached to plaintiffs' original petition is the original agreement entered into between plaintiffs and defendants, which reads as follows:
"Contract of Sale and Receipt of Earnest Money
"State of Louisiana "Parish of Caddo
"By This Agreement and Contract
"The purchase price is $15,000.00 payable as follows $15,000.00 Cash or notes per agreement to be reached later, of which purchaser has given their personal check, # _____ of January 31, 1945, on Bank __________, for $500.00 earnest money to hold property until April 1, 1945 and if additional time is needed by Purchaser another $100.00 earnest money will be paid to hold the property until June 1, 1945. Any and all Earnest Money to be returned to purchaser if Title is not clear. If Title is clear to apply on purchase price per one of above dates. *Page 817 
"The above property referred to is a Duplex and 4 car Garage Apartment located on a 60 foot lot as follows: E 58' of Lot 9 and W 2' of Lot 10 — Block "B" Thornhill Subdivision, Shreveport, Louisiana (936, 936 1/2 938 Dalzell)."
Another agreement in writing, signed on February 17, 1945, by plaintiff, G.H. Bland and defendant, A.P. Conner, is attached to the petition, which agreement reads as follows:
"$ 4,000 1st Haughton 1,500 2nd Sport ------- 5,500 500 Earnest Money 9,000 Home Federal Loan ------- "$15,000
"Payments on the $5500 — 1st 2nd
1st payment Int Bal on Prin on Apr. 1st
mortgage/ of $50.00 per month/ — Interest at 5% — Total payable on or before 12 mo. from date.
"The above general terms accepted."
Plaintiffs' petition alleged that the original agreement of January 31, 1945, left open for subsequent settlement the question of agreement upon terms which were set forth in the second agreement; that defendants refused to accept the provisions set forth in the second agreement, which refusal constituted a default on the part of defendants and thereupon vested plaintiffs with the right either to specific performance or to return of double the earnest money deposited at the time of the execution of the first agreement.
[1] It is obvious that the second agreement, as set forth above, was not binding upon the defendant Marie Louise Jarma Conner, since she was not a party thereto, and, since Mrs. Conner was the owner of the property, which was not under the community existing between herself and her husband, plaintiffs would have no right either to specific performance or to the forfeit of double the amount of earnest money resulting from a failure of the defendant Mrs. Conner to carry through this agreement.
As we view the matter, the case must be resolved by a determination of the meaning of the so-called agreement of January 31, 1945. There is no question but that all the parties to this instrument intended it to be a promise to sell, accompanied by the giving of earnest.
The essential requirements of a valid promise to sell which would entitle either party to enforce specific performance are clearly set forth in Article 2462 of the Civil Code:
"A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same."
Examination of the instrument in question discloses the fact that it does not comply with the requirements laid down by the codal provision. While there is evidenced in the instrument a mutual understanding of the parties as to the thing and theprice, there was no provision as to the terms of payment of the price, and, in fact, the instrument itself declared that the terms were to be left in abeyance pending agreement thereupon by the parties at a later date.
The record in this case abundantly bears out the fact that the parties never agreed upon mutually satisfactory terms. It appears that negotiations on both sides were left in the hands of the husbands, Bland and Conner, by their respective wives. This fact has no bearing upon the liability of the defendant Mrs. Conner, no allegation of agency of the husband having been made by plaintiffs, but it is vitally important in substantiating the proposition that all parties were negotiating in the attempt to reach mutually satisfactory terms for the payment of the purchase price, which would permit the consummation of what they regarded as an agreement to sell.
Mr. and Mrs. Conner made a trip to Benton for the purpose of checking the title on the Bland property at Haughton, and on the following day Mr. Conner and Mr. Bland inspected the property at Haughton. After this inspection Conner advised Bland he would not accept a $4,000 mortgage on the *Page 818 
Haughton property as a part of the consideration. But, at the same time, Conner suggested that Bland give him his automobile at an agreed price of $1,500, raise his cash deposit by $500, and reduce the amount to be allowed on the Haughton property by the sum of $2,000. Bland submitted this proposition to Mrs. Bland, who was unwilling to part with the automobile on the basis of the figure suggested. All through the negotiations there ran the understanding of the parties that $9,000 was to be procured by the Blands from a local homestead Loan association, which sum, added to the $500 paid over on January 31st, making a total of $9,500, was apparently all the cash available. The negotiations between the parties therefore were designed to produce acceptable collateral which would adequately secure the balance of $5,500 on the purchase price.
These negotiations, proposals and counter-proposals between the parties continued until sometime in March, when plaintiffs chose to bring suit predicated upon the two agreements referred to and above set forth in full.
[2, 3] In order to be construed as a valid and binding agreement to sell, the written instrument of January 31, 1945, should have reflected the clear and unambiguous understanding of the parties with reference to the terms of payment, as well as to the thing and the price. This, clearly, it failed to do. In the interpretation of agreements, while it is the duty of the Court to settle upon some interpretation which, if possible, will give life, meaning and validity to an instrument, this cannot be done at the cost of eliminating wording included in the agreement by the parties themselves. For the Court to hold that the instrument referred to was complete, valid and binding because it provided for the payment of the entire price in cash, would necessitate an absolute disregard of the fact that terms were contemplated by the parties, were not established and set forth in the instrument, and were specifically left to exact settlement by an agreement to be reached by the parties at a later date.
[4] We can only come to the conclusion that the instrument of January 31, 1945, is a nudum pactum, void, null and of no effect for want of that certainty which the law wisely requires.
In the case of Elmer v. Hart, 121 La. 537, 46 So. 619, in construing an option to purchase, the Supreme Court held that an acceptance on a condition not contained in the option amounted to a counter-proposition, and, accordingly, was not binding until accepted in writing by the other parties. The instrument there construed by the Court definitely fixed the thing, the price and the terms, the latter being set forth as being all cash, or one-third cash, and the balance in 8% notes in one and two years.
In the case before us any provision specifying the terms would have validated the agreement, but we cannot subscribe to the conclusion that an agreement is perfect simply because it provides that the price may be paid in cash, entirely disregarding the option of terms. The failure to specifically set forth the terms was chargeable to all parties and not solely to certain ones, and it is therefore only just that neither party should be made to suffer by reason of the error, mistake or oversight chargeable to all.
For this reason, we do not feel that the plaintiffs in this case should be entitled to recover the penalty which they seek, nor do we feel the defendants should profit by being permitted to retain a sum which was paid under the mistaken idea that it constituted earnest money on a valid contract.
[5] The only point which remains for determination is whether plaintiffs are entitled to judgment for the recovery of the sum of $500 which was paid into the hands of defendants at the time of execution of the instrument of January 31, 1945.
This claim is resisted by defendants on the ground that plaintiffs' petition originally prayed for specific performance, or, alternatively, for the return of the earnest money and an equal amount thereof as penalty, and did not pray simply for the return of the deposit of $500. It is further argued on behalf of defendants that plaintiffs elected to stand upon the validity of the so-called agreement of January 31, 1945, and cannot now be heard to claim the return of money which is due only in the event the *Page 819 
said instrument is determined to be null and of no effect.
With regard to the first contention, we believe plaintiffs' rights are protected under the prayer of their petition for "general and equitable relief." All the facts necessary to a determination of this matter are before the Court, and we can conceive of no reason for requiring the bringing of another suit involving the same subject matter and the same facts which are here fully presented. And, further, in view of the fact that defendants are now non-residents of the State, to force the plaintiffs to the difficulty of prosecuting a separate claim, which might be here and now adjudicated, would not be that character of equitable relief which they seek.
[6] As to the second argument advanced by the defendants, we find nothing inconsistent in plaintiffs' position. Originally plaintiffs based their action not on the validity of the agreement of January 31, 1945, but on the effect of the agreement of February 17th, which they regarded as validating and giving force to the initial agreement. Plaintiffs have consistently contended that the terms set forth in the instrument of February 17th clarified, explained and determined the terms which were referred to in the instrument of January 31st. As we have already pointed out, however, the latter agreement was not binding upon the defendant Mrs. Conner, and, therefore, plaintiffs have been stripped of the right to rely upon a completed contract as evidenced by the two instruments. If now they choose to advance the alternative claim that the instrument of January 31st, deprived of the support and clarification of the instrument of February 17th, was not valid, then we perceive no reason why such argument should not be accorded thorough consideration.
For the reasons assigned, the judgment appealed from, rejecting plaintiffs' demands, is reversed and set aside, and there is now judgment in favor of plaintiffs, G.H. Bland and wife, Mrs. G.H. Bland, and against the defendants, Mrs. Marie Louise Jarma Conner and husband, A.P. Conner, in the full sum of $500, with interest thereon from date of judicial demand until paid, together with all costs of both courts.
It is further ordered, adjudged and decreed that this judgment be satisfied out of the deposit in the hands of J. Howell Flournoy, Sheriff of the Parish of Caddo, State of Louisiana.